## IN THE SUPERIOR COURT OF THE STATE OF DELAWARE

## IN AND FOR NEW CASTLE COUNTY

DYNCORP, DYNCORP                    )
INTERNATIONAL, LLC;                 )
DYNCORP TECHNICAL                   )
SERVICES  LLC n/k/a CSC             )
APPLIED TECHNOLOGIES LLC;           )
and DYNCORP AEROSPACE               )
OPERATIONS     LLC,                 )
                                    )
        Plaintiffs,          )
                                    )
       v.                   )  C.A. No. 08C-09-218 JRJ
                                    )
UNDERWRITERS AT   LLOYD'S,          )
LONDON; CERTAIN LONDON              )
MARKET INSURERS; and                )
DOES 3-20,                          )
                                    )
        Defendants.          )

## ORDER

**AND NOW TO WIT**, this ____18th____ day of ____September____, 2014, the Court having duly considered Plaintiffs' Exceptions to the May 29, 2014 Ruling of the Special Discovery Master, **IT APPEARS THAT**:

1.  Since the commencement of coverage litigation in 2008, Dyncorp; Dyncorp International, LLC; Dyncorp Technical Services LLC n/k/a CSC Applied Technologies LLC; and Dyncorp Aerospace Operations LLC (collectively referred to as "Dyncorp") and Underwriters at Lloyd's, London; Certain London Market Insurers; and Does 3-20 (collectively referred to as "Underwriters") have engaged

in substantial discovery.[1]  Due to the sheer volume of documents, the Court and the parties jointly established deadlines for the production of documents and privilege logs, with non-expert discovery to be completed by March 15, 2013.[2]

2.  Consistent with established deadlines, Dyncorp issued its first privilege log on May 16, 2011.[3]  Thereafter, by joint stipulation dated June 28, 2012, the Court ordered Dyncorp to produce a supplemental privilege log identifying certain categories of documents withheld on the basis of privilege by July 16, 2012.[4]  On January 29, 2013, Dyncorp produced a revised privilege log.[5]

3.  On March 8, 2013, Underwriters filed a Renewed Motion to Compel the Production of Certain Documents Claimed Privileged from Dyncorp ("Renewed Motion No. 9").[6]  On March 15, 2013, Dyncorp filed its Opposition to Underwriters' Renewed Motion No. 9 and, on that same date, submitted a supplemental privilege log in which it asserted claims of privilege with respect to approximately fifty (50) newly-identified documents (the "Supplemental Log").[7] In its Renewed Motion No. 9, Underwriters argued that Dyncorp waived privilege

---

[1] Special Discovery Master's April 30, 2014 Final Report and Recommendation Regarding Defendants' Renewed Motion to Compel Production of Certain Documents Claimed Privileged ("SDM's Final Report") (Trans. ID 55376790) at 4.
[2] *Id.*
[3] *Id.*
[4] *Id.* at 4–5. *See* June 28, 2012 Stipulation and Order on Discovery Matter  No. 4 ("June 28, 2012 Order") (Trans. ID 45067675) .
[5] SDM's Final Report at 5.
[6] *Id.* at 5. *See* Renewed Motion No. 9 (Trans. ID. 54656912).
[7] SDM's Final Report at 5.

with respect to the documents logged on Dyncorp's Supplemental Log that were required to be produced pursuant to the June 28, 2012 Order.[8]

4. On April 30, 2014, the Special Discovery Master ("SDM") issued a Final Report and Recommendation Regarding Underwriters' Renewed Motion No. 9 ("SDM's Final Report"),[9] finding Dyncorp's untimely production of the Supplemental Log insufficient to justify waiver because "wavier is a penalty reserved for 'egregious abuses' by the privilege holder,"[10] and "[n]o evidence [was] presented to show or even suggest, that Dyncorp's untimely production of its Supplemental Log [was] the result of bad faith or a desire to cause unjustifiable delay."[11] However, the SDM directed the parties to submit briefing regarding the possible imposition of "[m]ore remedial sanctions, including the assessment of Special Master's fees against Dyncorp for its untimely production of its Supplemental Log."[12]

5. In support of its application for reimbursement of half of the SDM's fees associated with its Renewed Motion No. 9, Underwriters argued that Dyncorp's belated production of its Supplemental Log eight months after it was ordered to do

---

[8] *Id.* at 5–6, 11.

[9] *See supra* note 1.

[10] SDM's Final Report at 11–12 (citing *Saito v. McKesson HBOC, Inc.*, 2002 WL 31657622, *7 (Del. Ch. Nov. 13, 2002)).

[11] *Id.* ("Thus, waiver is too extreme a sanction, particularly in light of the fact that Underwriters [have] suffered no irreparable prejudice as a result of this untimely production.").

[12] *Id.* at 12 The SDM noted that "[l]ess egregious conduct—where it appears that there is a genuine claim of work product privilege in which there has been discovery abuse but with no final prejudice to the party seeking waiver—is typically resolved through more remedial sanctions." *Id.* (quoting *Wolhar v. Gen. Motors Corp.*, 712 A.2d 457, 463 (Del. Super. 1997)).

so prejudiced Underwriters and unnecessarily complicated the discovery dispute.[13] Dyncorp objected to Underwriters' application for reimbursement on the basis that Underwriters did not demonstrate prejudice as a result of Dyncorp's delayed production of the Supplemental Log.[14] Dyncorp pointed to the fact that the prior SDM did not undertake any work in connection with the Supplemental Log due to its untimely production.[15] Thus, according to Dyncorp, the documents on the Supplemental Log were substantively addressed for the first, and only, time in connection with the Renewed Motion No. 9.[16]

6. On May 29, 2014, the SDM issued a Report and Recommendation Regarding Dyncorp's Reimbursement of Certain Special Master Fees ("Reimbursement of Fees Report"),[17] recommending Dyncorp reimburse Underwriters $7,500, the portion of the fees incurred by the SDM in reviewing and analyzing documents logged on Dyncorp's March 15, 2013 Supplemental Log.[18] While finding that there was no prejudice to Underwriters from the Supplemental Log, the SDM found that Dyncorp's production of its Supplemental Log was untimely and in violation of the Court's June 28, 2012 Order requiring the Supplemental Log to be produced by July 16, 2012.[19] The SDM concluded that

---

[13] Reimbursement of Fees Report (Trans. ID 55517214) at 1.
[14] *Id.* at 2.
[15] *Id.*
[16] *Id.*
[17] *See supra* note 13.
[18] Reimbursement of Fees Report at 2–3.
[19] *Id.*

4

reimbursement of a portion of the SDM's fees incurred in connection with the Renewed Motion No. 9 is an appropriate sanction because Dyncorp offered no explanation to justify the untimely production.[20]

7. On June 12, 2014, Dyncorp filed a Notice of Exceptions to the SDM's May 29, 2014 Reimbursement of Fees Report.[21]

8. In its Exceptions, Dyncorp asserts that no basis exists for the award of any costs under Superior Court Civil Rule 37(a)(4)(A) because no evidence exists of any "discovery abuse" in relation to the Supplemental Log.[22] Dyncorp argues that: (1) the SDM's suggestion of a "sanction" for "discovery abuse" is inconsistent with the SDM's finding that no evidence was presented to suggest that Dyncorp's untimely production of its Supplemental Log was the result of bad faith;[23] and (2) the SDM's conclusion that Dyncorp offered no explanation to justify the late production of the Supplemental log was reached in error because Dyncorp set forth that "the late production was a result of unfortunate inadvertence in a litigation involving hundreds of thousands of documents and was corrected promptly without prejudice to Underwriters."[24]

---

[20] *Id.*

[21] Notice of Exceptions to the Special Master's May 29, 2014 Reimbursement of Fees Report ("Notice of Exceptions") (Trans. ID. 55586189).

[22] *Id.* at 3.

[23] *Id.*

[24] *Id.* at 3–4. The privileged documents at issue were on the local hard drive of a former employee's computer. *Id.* at 1. Dyncorp argues that the untimely production is justified because Dyncorp produced and logged all responsive documents on that hard drive immediately after the deposition of one of Dyncorp's Rule 30(6)(b) witnesses revealed that the hard drive may not have been previously located or searched. *Id.*

9. In response to Dyncorp's Exceptions, Underwriters argues that the reimbursement of fees is appropriate because Superior Court Civil Rule 37(b)(2) specifically provides that where a party fails to obey an order to provide discovery, the Court shall require the party to pay reasonable expenses caused by the failure unless the failure to comply with the order was substantially justified.[25] According to Underwriters, two findings by the SDM directly support the reimbursement: (1) when Dyncorp produced its Supplemental Log, it did so in violation of the Court's June 28, 2012 Order; and (2) Dyncorp failed to justify its production of the Supplemental Log eight months after it was ordered to do so.[26]

10. Rule 37 gives the Court broad discretion to impose sanctions and shift costs for discovery violations.[27] Under Rule 37(b)(2), if a party fails to obey an order to provide or permit discovery the Court "shall require the party failing to act . . . to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the Court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust."[28]

---

[25] Answering Brief to Dyncorp's Exceptions to May 29, 2014 Order of Reimbursement of Special Master Fees ("Ans. Br.") at 1–2.
[26] *Id.*
[27] *Pharmerica Long Term Care Inc. v. New Castle RX, LLC*, 2010 WL 5130746, *3 (Del. Ch. Dec. 8, 2010); Del. Super. Ct. Civ. R. 37(b)(2).
[28] Del. Super. Ct. Civ. R. 37(b)(2).

11.  Upon *de novo* review,[29] the Court finds that Dyncorp's production of its Supplemental Log was untimely and in violation of the Court's June 28, 2012 Order requiring the Supplemental Log to be produced by July 16, 2012. The Court finds that no explanation has been offered to substantially justify the untimely production.

12.  **WHEREFORE**, the SDM's May 29, 2014 recommendation that Dyncorp reimburse Underwriters $7,500 is hereby **APPROVED.** All exceptions are hereby **DENIED.**

**IT IS SO ORDERED.**

_____
Jan R. Jurden, Judge

---

[29] *Wolhar*, 712 A.2d at 458 ("The standard of review upon the filing of exceptions to a ruling of the SDM is *de novo*.").